*414 The Court overruled the motion, Judge Witherell dissenting. —
Jury called and sworn. —
Sibley, offered as evidence two certificates from the Treasury department, the first of which was dated the 24th. of Feby. 1821, and is as follows,
Doty, objected to the introduction of the papers as evidence, because
Ist By the common law rules of evidence, they are inadmissible. Those rules can neither be altered or abolished by Congress or the Legislature of this Territory. The Articles of Compact contained in the Ordinance of 1787,* are to “forever remain unalterable, unless by common consent.” By the second article it is declared, “The inhabitants of the said Territory shall always be entitled to the benefit of judicial proceedings according to the course of the common law.”
and If the Act of Congress of 1797* does not contravene this provision of the Ordinance, yet these are not transcripts within the meaning of that act. The Ist Sec. of the act of ’97, provides, that persons accountable for public money, neglecting or refusing to pay the same into the Treasury on the adjustment of their accounts, shall be sued by the Comptroller for the sum stated to be due. Sec. 2. A transcript from the books and proceedings of the Treasury, certified by the Register under the seal of the department, shall be admitted as evidence in such suit.
This act must be considered as supplementary or in addition that of 1795.① This latter act was the first passed on the subject of defaulters, and is entitled “An act for the more effectual recovery of debts due from individuals to the United States.” It provides that persons receiving monies for which they are accountable to the U. S. Shall be notified by the Comptroller, and if they do not settle within one year after the notice, suit shall be brought therefor. That lists of the claims of such debtors not allowed by the Comptroller, shall be served by the Marshalls on the claimants. The title of the act of 1797 is “An act to provide more effectually for the settlement of accounts between the United States and receivers of public money.” The act of ’95 provides in detail for the adjustment of accounts, and only directs that suit shall be brought. The act of ’97 presumes the accounts have been adjusted according to the act of ’95 and provides for the more speedy collection of them — it makes no provision as to the adjustment of them. Both of the acts are in force and they must be construed so as to give effect to both; and this is the only construction they will bear.
The “adjustment” of an account is the settlement of it by the parties or their agents. The mere footing up of the debits of a party’s own account is certainly not a settlement, nor is it evidence of an account stated. That *415 Boyd had charges against the government is admitted by the second account—in the first it should have been stated whether they had been allowed or rejected, and then the balance would have appeared well.—
The first certificate is not a “transcript from the books and proceedings of the treasury”—it exhibits nothing. A transcript is a copy. A certificate, that at the foot of certain columns on a certain page of a book are figures which when enumerated amount to a particular sum, would surely not be a transcript from the books. What is meant by proceedings? Is it not intended by this that whatever the accounting officers have done upon the accounts shall be certified so that the Court may be put in possession of all the facts as they appeared before the officers ?— If a defendant should alledge that he had not received a certain sum with which he is charged, when the acct. is certified in round numbers in this manner he is either precluded from saying any thing about it or must himself show and prove the items which compose the plffs. demand. This very charge too may have been the only one in contest between the debtor and the accounting officers.
Shall such a certificate then be evidence ?— Again, where the indebtedness has accrued by drafts on the Treasury, a certified transcript from the books and proceedings of the treasury can never be received as evidence of the consideration and due execution of the drafts. On the plea of non assumpsit the hand writing must be proved as in any other case. If not, a forged draft is as good as any other. It appears to me in such a case not only the item should appear in the acct. but the voucher itself must be produced. An affdt. of a deft, to these facts would be no ground for a continuance under the statute of ’97. ■—
jd It may perhaps be well to remark that the act of ’97 does not specify what fact the transcript shall be admitted to prove. I contend therefore the certificate is not evidence of the fact that there was a settlement between the parties on a particular day— this remains to be established by other testimony, as would be required on the account of any other party— If the Atty. shows that the provisions of the act of ’95 have been complied with, then a regular transcript would be good evidence as that is the mode by which the U. S say their accounts with their debtors shall be adjusted. The wish to know what charges in our account have been allowed and what rejected— the transcript does not show it, nor has the Marshall served upon Boyd a list of the claims rejected. The defend* is in every way deprived of his defence. It is also necessary then, that the fact should appear that the deft, is a delinquent, that notice has been given him to settle, and the service of the list of the claims not allowed, before the transcript can be admitted as evidence.
These transcripts do not charge the deft, either with money had & received, or lent and advanced— they say nothing about money. Although *416 Judge Woodward, in the case of Roby and Abbott a few days since, decided, that goods, wares and merchandize are considered as money, and evidence concerning them may be given under the money counts, yet, understanding the law to be different, I must insist that nothing of the kind can be received under them.* It will not be pretended these certificates are evidence of an account stated, they do not apply to either of the counts in ^ declaration, and are therefore inadmissible. The first transcript being bad, the second cannot be received, because, at best, it can only be evidence after its date, and it was made since the pleadings in the case have been closed.—
Sibley. The acts of ’95 and ’97 are independent of each other. But if not, that of ’97 must have force to the exclusion of the other; for where the same subject matter is twice legislated upon, the latter statute virtually repeals the former.
The transcripts are well made under the act of ’97, and it is not necessary they should contain more than they do. The U. S. are not bound to furnish defendants with the means of their defence.
The court must presume, from the words of the transcripts, that the charges are for money, and they will apply to either count.—
THE COURT — were unanimous that the transcripts were admissible as evidence. —
Sibley then read them to the jury, and Stated he had no more testimony on the part of the United States. He made a few comments to the jury on the evidence.
Doty — moved for a judgment of nonsuit, because the Dist. Atty. had not produced certain papers according to the notice given him. At the last term he informed the Dist. Atty. verbally, that on the trial he should require him to produce a certain contract between the parties, and on the 23d of Septr. last notice in writing to that effect was served upon Mr. S.— He referred to the Stat. of the Territory p. 320, and the 2 v. L. U. S. p. 63, for a Sec. containing the same provisions.—
Sibley—said the notice given was not reasonable notice within the meaning of the Statutes.
THE COURT — overruled the motion.
Doty, then introduced as evidence a written contract under seal, between the Ordnance Department by and with the consent of the Secretary at War, and the defendant, dated the 1st. of Octr. 1816, by which the deft, agreed to purchase certain articles as flints, tools for the use of the armories of the U. S. and ten thousand stands of arms, in Europe, and deliver the same at certain places within the U. S., but no time for the delivery was specified. On the contract the U. S. advanced him $6000. for which he gave a bond with two sureties. A certain per centum was to be allowed him on the *417 purchases, and any other compensation was to be settled between him and the Secy, at War.—
It was admitted by the Dist. Atty. and shown by the certificate of the Comptrlr to the second transcript, that the present action is brought for monies advanced the deft, on this contract.—
Doty, moved for a judgment of nonsuit. Because the action should have been upon the contract.
It is proved the money was advanced upon a contract under seal; and there is no evidence that the contract has been fulfilled or abandoned by either party; it is therefore still in force. And by the second certificate and by Mr. Lee’s letter, it does appear the U. S. are still receiving guns upon it— and have received and credited some since the commencement of the suit. But it is not the business of the deft, but of the pljf. to show that the contract was closed before this suit was instituted. He argued the question to the court, and offered to read the authorities in support of his motion, but Judge Withered said “he might keep them for some other occasion, as they would probably be of no use now.” The following are the cases he proposed to read—
“Assumpsit upon a quant, mer. will not lie, where the parties have made a sealed agreement, under which the labor was done, the work agreed to be done, being in part finished, though the plff. was prevented from fulfilling his undertaking by the deft.; but the action must be brought on the agreement itself.” Young v. Preston, 4 Cranch 239.
“The law will not imply an assumpsit, where there is an express promise.” 7 Mass. T.R. 107.
“Assumpsit will not lie upon a specialty, where the only contract which is stated as the cause of the liability of the defendant, is entirely contained in the specialty, and no circumstance is added but such as is provided for by the specialty.” 1 Cranch 332, 1 Dallas 208, 1 Washgn R 170, 1 Selw. N.P. 80, Bull. N. P. 139, Strange 638, 1 Bos. & Pul. 354, 1 Wilson R. 117.—
“An indeb. assumpsit will not lie upon a special agreement, till the terms of it are performed.” Gordon & Martin, Fitzg. 302.
“Declaration on a special agreement and a quant, mer., if the Special agreement is proved, the action is well.” Keeks case, 1744.
“Where there is a count on the Special agreement, and an insimul com-putas set, evidence may be given on the ins. comp.” Douglass 651.
“Assumpsit for money had and received will not lie, when the payment has been made on a contract which is still open, and not given up by the defendant.” Weston v. Downes, Douglass 23.
“Money paid in advance on account of services to be performed, may be recovered back, in case of nonperformance, in an action for money had and received. And the defendant is not bound to show a performance of the agreement on his part; but the plaintiff must prove the non-performance” *418 Wheeler & v. Brackett, 12 Johns. R. 363. (In this case of Boyd’s, it is admitted the contract was in part performed, and there is no proof as to the residue.)
“Indeb. assumpsit will not lie for the labor actually performed on a special contract, a part of which contract has been performed and the residue abandoned.” “Where the contract is Still in force, the party cannot resort to the general counts.” 13 Johns. R. 96, 14 Johns. R. 326.
“Where a contract is entire, a full performance is a condition precedent to the plffs. right of action.” 13 Johns. R. 53.
“Where a party intends to abandon or rescind a contract, on the ground of a violation of it by the other, he must do so promptly & decidedly, on the first information of such breach.” 17 Johns. R. 437. (This not being done in Boyds case, the contract was continued in force.)
“Where a special contract is still subsisting unrescinded, the remedy of the party must be upon the contract.” Clark v. Smith 14 Johns. R. 326.
The court unanimously overruled the motion for a nonsuit.— (They gave no reasons for the decision)
Doty— then proceeded to show, that certain charges, made by the deft., ought to be allowed. On the 24th. Feby. 1821, the U. S. claim $6634.43, as appears by the first transcript. On the 22d of August 1822, the accounts are re-audited, and on a charge of $5090.00 for 581 Stands of arms the deft, is allowed $4350.00, which reduces the whole claim of the U. S. to $2284.43. Another charge in the defts. account is “For 500 guns delivered to T. L. McKenney, Superintendent of Indian Trade, together with 700 doz. Indian knives and 100 doz. Fire-steels — $4200.” It was contended, that as the U. S. had recd these articles they should account for them at their price: that on this charge the U. S. have agreed to allow $2239.17, which on neither of the transcripts appears to have been credited to the deft.— As evidence of this acknowledgment he read from a letter written by Mr Lee, 2d Auditor to the deft.— dated the 15th. Deer. 1821. “In respect to the guns turned over by you to Col. McKenney Supertnt. of Indian Trade, he has only been able to dispose of 230 of them at $7. each, which with 700 doz. of Indian knives, and 100 doz. of Fire steels, amount to the sum of $2239.17 which has been passed to your credit, being less $1960.83 than the amount you contemplated would be transferred to your credit on the books of this office through the agency of Col. McKenney.” Thus it appears that in 1819 the bal. due the U. S. is $6634.43 — in Feby. 1821 it is the same, and although $2239.17. “is passed to the defts. credit” on or before the 15th. of Deer. 1821, yet on the 22d Augt. 1822, the bal. is still $6634.43 against him! — for it is not pretended this Sum has any relation to the sum of $4350.00. He insisted also that the deft, was entitled to some compensation for his services and expenses while in Europe making the purchases under the contract. *419 and that there are various other things which this form of action precludes him from availing himself of in his defence. The sum charged for his services was $2200. It is also in proof that Mr. McKenney (one of the agents of the Govt.) recd of the deft. 270 Guns, besides the 230, which he now wishes to return to the deft, because they are unfit for use —■ having been 4. years in his possession. They must be allowed as recd on the contract, at $10. each, the rate stipulated upon in the contract.—
Judge Woodward charged the Jury that the plffs. demand was supported by the evidence, and that all had been allowed the deft, to which he was entitled. That as to the admission in Mr. Lee’s letter it must be taken as it Stood —■ it stated that the sum of $2239.17 had been passed to his credit, and the jury must presume it was in some manner credited before the date of the letter. The jury returned a verdict for the plffs. for $2421.50 —
Doty moved the court in arrest of judgment, and on the 10th. day of Octr.— filed with the clerk his reasons for the arrest—
The judgment ought to be arrested because, the action was discontinued before the day on which it was tried. The Term and sessions of the court* are fixed and regulated by a territorial stat.— see L.M. 314, where the mode of adjourning the Court from day to day is declared and prescribed. It does not appear by the Journal that the court adjourned, on the second day of term, to any other day in the term, or without day; nor that the clerk attended every day, as is provided by stat., until the court was opened again. The failure to enter the adjournment operated a discontinuance of every case.
The persons who tried the case did not compose a legal jury. The 4th. Sec. of the “Act concerning Grand and petit jurors,” L.M. 136, provides— that the clerk “shall issue a venire directed to the shff. of the county, and deliver the same to him at least 12 days before each stated session of the court, commanding” &c. “which venire shall be served at least six days before the setting of the court” &c. By an act of Congress, 2 v.L. U.S. 60, Juries in the U. S. courts are to be Summoned and returned in the same manner as they are in the highest court of law where such [*] U. S. courts may sit. No venire issued before the term, nor were these persons summoned, according to the provisions of the territorial act referred to.—
This is not the true term of the court when Sitting as a Circuit and District Court of the United States; nor was the writ returnable to a proper term.—
The court overruled the motion, and gave judgmt for the U. S.

1 V.L. U.S. 478.

2 v.L.U.S. 594

2 v.L.U.S. 502

 7 Mass, T. R. 358.

Decision in the case of the U.S. v. Puthoff.